IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DONALD DiGERONIMO, | Case No. 1:22-cv-00773 |
| Plaintiff, | |
| -vs- | JUDGE DAVID A. RUIZ |
| UNUM LIFE INS. CO. OF AMERICA, *et al*., | **Memorandum Opinion and Order** |
| Defendants. | |

Now pending is Plaintiff's Motion for Discovery, moving the Court for an order requiring Defendant to respond to proposed Interrogatories, Requests for Production of Documents, and Requests for Admissions. (R. 24, PageID# 4685). Plaintiff additionally requested an order to permit a future deposition of any medical or vocational reviewer identified in the interrogatory response(s). *Id*. Defendant filed a Brief in Opposition to Plaintiff's Motion for Discovery. (R. 25). Plaintiff filed a Reply in Support of the Motion for Discovery. (R. 26). For the reasons stated below, the Court denies Plaintiff's motion.

**I. Facts**

Plaintiff was employed by Independence Excavating ("Independence"). (R. 14, PageID# 200-201). Nearly twenty years ago, in September of 2004, Plaintiff began treatment with Nancy Foldvary-Schaefer, D.O., for epilepsy. (R. 14-1, PageID# 172–174). He underwent a right temporal

lobe resection two years earlier. (R. 14-1, PageID# 172). On August 20, 2020, Plaintiff applied for long term disability (LTD) benefits due to epilepsy related seizures. (R. 14-1, PageID# 275-276).

Dr. Foldvary-Shaefer's opinion on July 28, 2020, indicated "No use of heavy equipment/machinery, avoid heights/climbing, [and] avoid sharp moving objects/equipment" due to "seizures with confusion, altered mental state/cognition, stress, especially as his job is main trigger for seizure occurrences." (R. 14-1, PageID# 173-174). The restrictions were indicated to have begun in 2004 and extended to the "present [year 2020], ongoing." *Id*. at PageID# 173. A letter authored by Dr. Foldvary-Schaefer just a few months later—on October 14, 2020—stated as follows:

> Mr. Digeronimo primarily experiences nocturnal seizures which disrupt his sleep pattern. He has difficulty falling back to sleep after seizures and is therefore sleep deprived in the morning. Sleep deprivation results in impaired cognitive functioning and increased stress through out the next day. Known aura/seizure triggers for Mr. Digeronima [sic] are sleep deprivation and job duty stress. The combination of nocturnal seizures, sleep deprivation, cognitive impairment and increased job stress are the findings that support his inability to fulfill job responsibilities.

(R. 14-1, PageID# 785).

On October 22, 2020, Defendant's in-house physician consultant, Joseph A. Antaki, M.D., contacted Dr. Foldvary-Schaefer's office and spoke to a nurse, who clarified that Plaintiff has nocturnal seizures, which do not require a driving restriction; the nocturnal seizures result in impaired cognition the following day; and Plaintiff was last seen on July 28, 2020 with no changes in treatment at that time. (R. 14-2, PageID# 804-805). Dr. Antaki noted that Plaintiff's most recent brain MRI was considered "stable" without an indication for further tumor treatment, Plaintiff's KPS (Karnofsky Performance Status-used in assessments of those with cancer) scale was "90," which was consistent with an ability to carry on normal activity and work." (R. 14-2, PageID# 808).

On October 28, 2020, outside physician consultant Michael Chilungu, M.D., reviewed Plaintiff's file and came to the following conclusion:

> Based on the available information, clinical evidence does not support functional neurologic impairment during the period under review.
>
> The claimant has complained of symptoms of recurrent, primarily nocturnal seizures, as a cause of occupational impairment. The claimant's medical providers, Neurologist Dr. Fodvary Shaefer [sic], has similarly argued that the claimant is impaired based on the above concern, opining that the claimant has difficulty falling asleep afterwards, with residual cognitive effects from disrupted sleep.
>
> The available information related to the claimant's neurologic physical examinations, however, reveal no evidence of significant abnormalities on medical examination that would lead to concerns for significant neurologic functional impairment. The claimant demonstrates consistently unremarkable neurological examinations throughout the medical record. Although the claimant demonstrates evidence of underlying epilepsy on EEG testing, his seizures occur mostly after-hours, are brief, and reportedly nocturnal. On 7/28/2020 the claimant's seizures are described as mostly consisting of him staring for 30 seconds, and it is reported during that visit that his last seizure was 5 weeks prior. The claimant demonstrates stable neuroimaging findings of stable postsurgical changes and no evidence of brain tumor recurrence on brain MRI testing, dated 4/29/2020, that suggest disease stability throughout the medical record. No detailed cognitive testing is documented in the medical record to substantiate a claim that the claimant is cognitively impaired to such a degree as to preclude occupational involvement. Routine neurologic testing reveals normal gross cognition. Although travel is a material function of the claimant's occupation, the claimant reportedly is not under driving restrictions, due to the nocturnal nature of his seizures. On the basis of the above, I am in agreement with the OSP that there is insufficient evidence to assert that the claimant lacks the ability to function in a full-time occupation at the above described level of exertion.

(R. 14-2, PageID# 817).

On November 5, 2020, Plaintiff's claim for LTD benefits was denied. (R. 14-1, PageID# 842-848). Plaintiff submitted an appeal on December 16, 2021, along with his own affidavit, an opinion from Dr. Foldvary-Schaefer from October 28, 2021, a vocational report from Kathleen Reis, and medical records from the Cleveland Clinic spanning over twenty years. (R. 14-1, PageID#

1006). Dr. Foldvary-Schaefer's letter stated that Plaintiff had been treated with multiple medications and two temporal lobectomy procedures in hopes to control his seizures, but "he continues to have persistent daytime and night time seizures… triggered by stress and lack of sleep." (R. 14-2, PageID# 1026). Post-seizure recovery periods can last 24-48 hours, and symptoms during this time could include lethargy and confusion. *Id*. It was Dr. Foldvary-Schaefer's opinion that Plaintiff "would be unable to maintain any employment on a full-time basis due to being off-task at least 20% of an eight hour work day and because of issues with absenteeism of at least three to four times per month." She continued that Plaintiff's limitations included "no arbitration, confrontation, negotiation, frequent interaction with others for full-time work, and absolutely no work involving him being responsible for the health, safety, or welfare of others." *Id*.

On January 28, 2022, physician consultant Scott B. Norris, M.D., reviewed Plaintiff's file and medical records—including letters from Dr. Foldvary-Schaefer received both before and after Plaintiff's appeal—and concluded that medical evidence did not support Plaintiff having restrictions and/or limitations that would preclude the demands of his occupation. (R. 14-7, PageID# 4023-4025).

On March 2, 2022, Ms. Reis authored a letter focusing on Plaintiff's real estate investment business. (R. 14-7, PageID# 4065-4067). She indicated that Plaintiff's work in this regard is "fully accommodated … that is in no way equivalent to regular competitive employment" and "is performed on an irregular, idiosyncratic, seizure-event-based schedule." *Id*. at PageID# 4067.

On March 4, 2022, Dr. Foldvary-Schaefer wrote a brief four-sentence letter that merely disagreed with the medical reviewers conclusions, and stated that she "stands by" her initial opinion

4

of October 28, 2021. (R. 14-7, PageID# 4064). No explanation is contained in the letter for Dr. Foldvary-Schaefer's disagreement. *Id*.

On March 9, 2022, Defendant completed the appeal and ultimately denied Plaintiff's claim. (R. 14-7, PageID# 4071-4080).

## II. Discovery In ERISA Cases

The Federal Rules of Civil Procedure permit discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . . ." Fed. R. Civ. P. 26(b)(1). The ERISA statute itself does not address discovery, though plaintiffs in ERISA cases generally are not entitled to obtain discovery outside of the administrative record. *See Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 615 (6th Cir. 1998). Plaintiff agrees with Defendant that "typically, there is no discovery available in an ERISA benefits case because the Court's review is limited to the administrative record." (R. 25, PageID# 4735).

> The general rule in ERISA denial-of-benefits cases is that the district court's review is limited to the administrative record, and thus discovery is not available. *See Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 430 (6th Cir. 2006). An exception exists, however, if discovery is sought "in support of a procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part." *Id*. (quoting *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 619 (6th Cir. 1998)). To be entitled to such discovery, an ERISA claimant must first "provide sufficient evidence of bias—or of any procedural irregularity—to justify prehearing discovery. ... [A] mere allegation of bias is insufficient to throw open the doors of discovery in an ERISA case." *Likas v. Life Ins. Co. of N. Am.*, 222 Fed. Appx. 481, 486 (6th Cir. 2007) (internal quotation marks omitted).

*Guest-Marcotte v. Life Ins. Co. of N. Am.*, 730 Fed. App'x 292, 304 (6th Cir. 2018); *Johnson v. Connecticut Gen. Life Ins. Co.*, 324 Fed. App'x 459, 466–67 (6th Cir. 2009) (noting that "the

Supreme Court's admonition in *Glenn*[1] discouraged the creation of special procedural or evidentiary rules for evaluating administrator/payor conflicts of interest counsels … [but] [t]hat does not mean, however, that discovery will automatically be available any time the defendant is both the administrator and the payor under an ERISA plan.")) The Sixth Circuit has observed that the limitation on discovery "is a result of the determination that matters outside the administrative record are ordinarily not relevant to the court's review of an ERISA benefit decision." *Johnson*, 324 Fed. App'x at 467. Rather, "[d]istrict courts are well-equipped to evaluate and determine whether and to what extent limited discovery is appropriate in furtherance of a colorable procedural challenge under *Wilkins*." *Id.*[2] In summary, while no "threshold evidentiary showings of bias" are required before discovery may be permitted, discovery is not automatically available simply because a defendant is both the administrator and the payor under the ERISA plan, and a mere allegation of bias is insufficient.

### III. Plaintiff's Discovery Requests

Plaintiff has requested the Court's approval to engage in discovery, and has attached a numbers of Interrogatories, Request for Production of Documents, and Requests for Admissions to his motion for discovery. (R. 24-2). Plaintiff also requests that he be allowed to depose any medical or vocational reviewer identified in the Interrogatory responses. (R. 24, PageID# 4685). Broadly speaking, Plaintiff wishes to engage in discovery concerning the following topics: (1) the identity of each employee, agent, or vendor who was involved in adjudicating or offering an opinion on

---

[1] *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 113 (2008).
[2] The "significance of the conflict" of interest depends "on the circumstances of each case," looking at whether a conflict of interest is more or less "important." *Johnson*, 324 Fed. App'x at 465.

Plaintiff's claims;³ (2) information concerning *other* unrelated claims from the past five years where the monthly benefit exceeded $8,200; (3) information concerning *other* unrelated claims from the past five years involving epilepsy or recurrent seizures; (4) the medical qualifications, curriculum vitae [CV], etc. of any employee, agent, or vendor who was involved in adjudicating or offering an opinion on Plaintiff's claims—particularly Dr. Norris, Nurse Abbot, and Mr. O'Kelley—and any prior participation of said individuals in other lawsuits related to their medical vocational reviews; and, (7) the salaries, bonuses, and stock dividends of certain individuals. (R. 24-2).

Plaintiff offers the following theories as justification for the discovery he seeks on the aforementioned topics: (1) Defendant Unum has an inherent conflict of interest because it determines eligibility for benefits and is also the payor of benefits; (2) the relatively high-level of benefits in this action ($8,500 per month); (3) Defendants' alleged "targeting" of seizure disorder claims for denial; (4) Mr. O'Kelley's status as a "Senior Vocational Rehabilitation Specialist," which suggests a long employment history with Unum, coupled with his name arising in connection with two lawsuits against Unum; (5) Dr. Norris's involvement in at least forty cases in district court wherein his opinions have often been criticized as "conclusory," "not borne out by the objective evidence," or "cherry-picking" the evidence; (6) claims of reviewers receiving bonuses only if the company as a whole reaches a certain profitability threshold; and, (7) Defendant Unum's refusal to provide claimant with the CVs of its medical or vocational reviewers prior to litigation. (R. 24).

---

³ In the Court's view, the identity of such individuals should be apparent from the Administrative Record.

7

It is Defendants' position that Plaintiff has offered nothing more than mere allegations of bias. Furthermore, Defendants assert that even if Plaintiff has alleged a colorable procedural challenge, the requested discovery amounts to a fishing expedition. (R. 25).

### A. Defendant Unum's Alleged Inherent Conflict

Plaintiff asserts that Defendant Unum has an inherent conflict of interest because it determines eligibility for benefits and is also the payor of benefits. "It is true that when, as in this case, 'a plan authorizes an administrator both to decide whether an employee is eligible for benefits and to pay those benefits, it creates an apparent conflict of interest.'" *Outward v. Eaton Corp. Disability Plan for U.S. Emps.*, 808 Fed. App'x 296, 313 (6th Cir. 2020) (*citing Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 165 (6th Cir. 2007)). In *Outward*, the Sixth Circuit affirmed a district court's denial of discovery despite the existence of an apparent conflict, finding that the plaintiff therein "failed to provide a factual basis for her claim of excessive bias." *Id.*; *see also Collins v. Unum Life Ins. Co. of Am.*, 682 Fed. App'x 381, 389 (6th Cir. 2017) ("[t]hough we have identified a conflict of interest as a type of bias that *may* warrant additional discovery, '[t]hat does not mean, however, that discovery will automatically be available any time the defendant is both the administrator and the payor under an ERISA plan' [and] … the claimant must put forth a factual foundation to establish that he has done more than merely allege bias"). Furthermore, even "[w]here a plaintiff has laid a factual foundation to support a claim for lack of due process or bias, his right to discovery must be balanced against the 'need to prevent fishing expeditions.'" *Pearce v. Chrysler Grp., L.L.C. Pension Plan*, 615 Fed. App'x 342, 350 (6th Cir. 2015) (citations omitted).[4] Therefore, while the presence of an apparent conflict is

---

[4] Even the decision in *Orlandi v. Osborne*, No. 3:20-CV-2237, 2022 WL 4599252, at *6 (N.D. Ohio Sept. 30, 2022) upon which Plaintiff heavily relies acknowledges "that discovery will [not]

8

a factor this Court has considered in deciding whether discovery should be permitted, that fact alone, at least under the circumstances of this action, does not provide a basis for discovery.

### B. High-Value Claims and Prior Review Opinions

Plaintiff asserts discovery is warranted because Plaintiff believes it is necessary "to show the trend and bias that Unum denies claims over $8,200 more often than those under this amount." (R. 26, PageID# 4781). Neither Plaintiff's brief in support of its motion nor his reply brief offer any factual foundation for such an allegation, and the assertion is nothing more than a mere allegation of bias.

Conversely, Defendant Unum has submitted an affidavit from its Lead Appeals Specialist in the Appeals Unit, Kasandra Hazard, who stated that she does not "take into account as part of my work what financial implication to Unum, if any, results from my appeal decision" and that she knows of no policy, guideline, or instruction that would result in heightened review procedures depending on a claim's dollar amount, as all claims are to be reviewed fully and fairly under the terms of the specific disability policy." (R. 25-1, PageID# 4751, ¶¶13-14).

Further, the Court agrees with the non-binding decision from the Third Circuit Court of Appeals that a claimant's request for discovery concerning denial rates has minimal value. *Reichard v. United of Omaha Life Ins. Co.*, 805 Fed. App'x 111, 116–17 (3d Cir. 2020) ("A low reversal rate would not prove bias or a conflict of interest [as the claimant] would have to show that each of those decisions was unreasonable based on the evidence in each file. Doing so would require a mini-trial on each of these other appeals."); *accord Hughes v. Hartford Life & Accident Ins. Co.*,

---

automatically be available any time the defendant is both the administrator and the payor under an ERISA plan."

9

507 F. Supp. 3d 384, 399 (D. Conn. 2020) ("bare numbers or percentages of claim denials are meaningless without additional context – and that context cannot be provided without holding mini-trials on the other claims."); *cf. Mercer v. Unum Life Ins. Co. of Am.*, No. 3:22-CV-00337, 2023 WL 3131989, at *2 (M.D. Tenn. Apr. 27, 2023) (acknowledging *Reichard*'s admonition against "batting average" discovery and mini-trials and noting the Sixth Circuit has not yet weighed in on the propriety of "batting average" discovery, but disallowing requested discovery as overly burdensome).

Given that Plaintiff's request for discovery is based on nothing more than a mere allegation that higher value claims are denied more frequently, his concomitant requests for discovery are denied.

**C. Seizure Disorder**

Plaintiff requests discovery concerning the denial rates of claims where an individual suffers seizures or seizure-like disorders (which fall under ICD Code G40). (R. 24, PageID# 4691). However, Plaintiff's request is based on little more than the allegedly "dismissive actions by Defendant from the beginning of Plaintiff's claim [which] give[s] rise to the concern that it treats individuals with this condition differently." (R. 24).[5] In his reply brief, Plaintiff disagrees with Defendant that his request is "speculative" and states that once it receives the requested discovery, "[t]he data will speak for itself." (R. 26, PageID# 4782). Plaintiff's assertion—albeit confident in

---

[5] Plaintiff's citation to a handful of cases nationally during a twenty-year time-span involving individuals who had claims denied or terminated where seizures were involved (R. 24, PageID# 4690, n. 2) is a wafer-thin pretext for discovery. Furthermore, Defendant persuasively distinguishes those handful of cases from the case at bar. (R. 25, PageID# 4740).

tone—reveals that this request is nothing more than a fishing expedition. Again, as there is no factual foundation for this requested discovery, it is denied.

**D. Prior Review Opinions by Mr. O'Kelley and Dr. Norris**

Plaintiff's discovery requests, specifically, Interrogatories Nos. 8 and 10, seek statistical information related to the medical and vocational reviewers who considered his claim. (R. 24-2, PageID# 4726-4727). Plaintiff's Requests for Production of Documents Nos. 4 and 5 seek documents related to the aforementioned interrogatories. *Id.* at PageID# 4728.

With respect to Mr. O'Kelley, Plaintiff has argued that "Mr. Kelley is not only a 'Senior Vocational Rehabilitation Specialist,' which alludes to a long employment history with Unum, but he has been named in [two] other cases where a dispute has arisen." (R. 24, PageID# 4692, *citing Earhart v. Unum Life Ins. Co. of Am.*, 2013 WL 12180911, at *4 (E.D. Mich. July 3, 2013); *Flores v. Unum Life Ins. Co. of Am.*, 2020 WL 2812762, at *7 (E.D. Mich. May 29, 2020)). With respect to the *Flores* decision, Defendant points out that it does not aid Plaintiff as the decision granted judgment in Unum's favor, describing its decision to deny benefits as "rational and well-supported." 2020 U.S. Dist. LEXIS 93822 at *31.[6] Defendant also prevailed in *Earhart*, and O'Kelley is not mentioned. 2013 WL 12180911. Thus discovery concerning Mr. Kelley or any of the other unnamed medical and vocational reviewers who considered Plaintiff's claim is not permitted.

---

[6] Plaintiff does not dispute this, but rather asserts "[t]he purpose of Plaintiff's citation of a case involving Mr. O'Kelley were to show his history of working for Unum. The outcome of the case was irrelevant." (R. 26, PageID# 4786, n. 3). The Court finds Mr. O'Kelley's mere employment history with Defendant Unum does not provide any basis for opening up this matter to discovery concerning his prior opinions on unrelated claims while working for Unum.

11

Conversely, Plaintiff cites multiple cases where Dr. Norris's opinion were highly criticized by various district courts both within this Circuit and around the country. (R. 24, PageID# 4693-4694). By way of examples, one decision noted that "Unum's physicians [including Dr. Norris] mischaracterized and/or ignored evidence in the record." *Tam v. First Unum Life Ins. Co.*, 491 F. Supp. 3d 698, 710 (C.D. Cal. 2020). Another decision suggested that Dr. Norris's opinion was "nothing short of arbitrary." *Hannon v. Unum Life Ins. Co. of Am.*, 988 F. Supp. 2d 981, 992 (S.D. Ind. 2013). Defendants oppose discovery, reasserting *inter alia* their above argument—that percentages of claim denials are meaningless, without additional context, and have low value.

Although Plaintiff raises questions regarding the quality of Dr. Norris' opinions in other cases as grounds for alleging bias and procedural irregularity, the argument is not persuasive. Rather, the aforementioned rationale for precluding discovery into other claims history holds here, because opening discovery as Plaintiff requests—into a five year period of other claims consideration—would not show "bias or a conflict of interest [as the claimant] would [still] have to show that each of those decisions was unreasonable based on the evidence in each file. Doing so would require a mini-trial on each of these other appeals." *Reichard*, 805 Fed. App'x at 116–17; *accord Hughes*, 507 F. Supp. 3d at 399 ("bare numbers or percentages of claim denials are meaningless without additional context – and that context cannot be provided without holding mini-trials on the other claims."). Here, the requested discovery is no different, as Plaintiff's request for discovery—in for example Interrogatories Nos. 8 and 10, and Documents Requests Nos. 4 and 5— is based on mere speculation that there may be an unspecified argument gleaned from "batting average" discovery into other claims, while identifying no meaningful factual foundation.

Moreover, Plaintiff has not demonstrated sufficient basis to permit the deposition of any medical or vocational reviewer. As such, these discovery requests are denied.

### E. Performance Bonuses and Company Profits

Plaintiff has also sought discovery on the issue of whether Defendant's medical reviewers have a financial incentive to deny claims. (R. 24, PageID# 4691). Interrogatory No. 9 seeks the following from every employee, agent, or vendor who was involved with Plaintiff's disability claim: wage-based or salary earnings; their "performance based bonus" ("PBI"); their PBI Target percentage; their Individual Achievement and Contribution percentage(s); the Corporate Achievement percentage applicable to them; their Long Term Incentive ("LTI") Target; the number of Unum Group (UNM) stock(s) and/or share(s) owned by them; and the total income and/or payment(s) from Unum Group (UNM) stock dividends. (R. 24-2, PageID# 4723).

Plaintiff claims it "has obtained documents showing Unum's doctors support terminating claims, with predictable reliability." (R. 24, PageID# 4695). However, the only document Plaintiff cites are excerpts of a deposition of Freeman E. Broadwell, III, M.D., Lead Medical Director in the Medical Operations area for Unum. (R. 24-1, Exh. 6, PageID# 4701-4719). Plaintiff asserts that, based on this testimony, UNUM medical consultants may receive a PBI and/or a LTI bonus. (R. 24, PageID# 4695). Nevertheless, Plaintiff points to nothing in the attached exhibit that suggests either the PBI or LTI bonuses are based directly or indirectly on the rate with which they approve or deny claims. The deposition, however, does indicate that the bonuses are only available if the company, Defendant Unum, reaches a certain profitability threshold. (R. 24-1, PageID# 4715-4716, Broadwell Depo. at 126-127). Plaintiff characterizes the bonuses as a system that incentivizes denials. (R. 24, PageID# 4696).

13

Plaintiff asserts that courts have held that "[b]onus or incentives for claims denials would indeed be relevant to and probative of bias in plaintiff's claim." *Id. citing Neubert v. Life Ins. Co. of N. Am.*, 2013 WL 5595292, at *6 (N.D. Ohio Oct. 10, 2013); *Hays v. Provident Life & Accident Ins. Co.*, 623 F.Supp.2d 840, 844 (E.D. Ky. 2008) (plaintiff is entitled to know generally if the defendant had at any time relevant to this case, any type of incentive, bonus, or reward program or system, formal or informal, for any employee(s) involved in any meaningful way in reviewing disability claims); *Sundermeyer v. Ohio Educ. Ass'n*, 2013 WL 3147952, at *6 (S.D. Ohio June 19, 2013) ("Plaintiff is entitled to limited discovery related to the existence of financial incentives to deny his benefits claim."). Notably, Plaintiff's discovery request is not narrowly tailored as to whether Defendants generally have a policy that rewards or incentivizes claims denials. Nor does it request a written description of the PBI or LTI bonuses. Rather it requests the salary and bonus information of each and every individual to touch upon Plaintiff's claim, essentially *assuming without any basis* that each of these individuals have a financial incentive to deny his claim.

To the extent there was any ambiguity in Dr. Broadwell's deposition testimony, his affidavit in this case is unequivocal on the issue of compensation and any relation to denied claims:

> **The compensation of Unum's in-house physicians and physician contractors has no relation to the number of claims in which they conclude that a claimant's restrictions and limitations are supported or not supported**. Nor is their compensation related to any decision by Paul Revere [a subsidiary of Unum] that benefits are payable or not payable under the terms of any particular policies of insurance. Further, they do not have access to the data contained in Weekly Tracking reports and are not otherwise privy to such information.

(R. 25-2, PageID# 4763, Exh. 1, Broadwell Aff. at ¶4) (emphasis added).

Under these circumstances, the Court finds Plaintiff has merely alleged that a financial incentive exists. Unlike most of the above cases, there is no indication that any of Defendant's

14

employees or outside vendors have a financial incentive to deny benefit claims. The Court finds that the mere fact that an employee may not receive a bonus unless the company is profitable does not, without more, establish a sufficient foundation for bias to permit the extensive discovery sought.

To the extent any of the above district court decisions suggest that *any* bonus structure that is tied to a company's profitability—regardless of the size of the company, regardless of the impact of benefit claims on a company's overall profitability, etc.—is sufficient to open up the floodgates of discovery, this Court disagrees. While compensation tied to approval or denial rates is certainly relevant to the issue of bias and is discoverable, discovery into a person's wage, salary, bonus plan and/or general compensation without any meaningful factual connection to an individual employee's approval/denial decisions or recommendations is too remote to automatically authorize discovery.

**F. Defendant Unum's Refusal to Provide CVs**

As another basis for its discovery requests, Plaintiff asserts that his counsel requested the resumes and/or CVs of Defendants' medical and vocational reviewers, but this request was denied. (R. 24, PageID# 4697, *citing* R. 14-7, PageID# 4033). Indeed, the record reflects that Defendant took the position that "[a]lthough we acknowledge your rationale to have the CV and/or length of employment with Unum, we are not obligated to honor this request during the appeal review." (R. 14-7, PageID# 4035). In another letter, Defendant Unum indicated that "[i]f you disagree and have specific legal authority that you believe requires us to produce CVs and other employment information you are welcome to send it. Upon receipt of that information, we will further review and respond." (R. 14-7, PageID# 4045). There is no indication that Plaintiff ever furnished any legal authority to Defendant during the appeal process. Plaintiff similarly fails to identify any legal

15

authority in his brief standing for the proposition that such information must be turned over during an appeal. (R. 24, PageID# 4698). Rather, Plaintiff relies on his own interpretation of federal regulations.[7]

The Court finds that Defendant's refusal to tender to Plaintiff the CVs and/or resumes of its reviewers during the appeal process does not provide any foundation for opening up this case to extensive discovery.

### IV. Conclusion

For the foregoing reasons, the Court exercises its discretion and denies Plaintiff's discovery requests, as they are premised on speculation or mere allegations without meaningful factual foundation. Therefore, Plaintiff's Motion for Discovery (R. 24) is DENIED.

IT IS SO ORDERED.

*s/David A. Ruiz*
DAVID A. RUIZ
Date: August 27, 2025					UNITED STATES DISTRICT JUDGE

---

[7] Plaintiff cites 29 C.F.R. § 2560.503-1(m)(8)(i)-(ii), which states that "[a] document, record, or other information shall be considered 'relevant' to a claimant's claim if such document, record, or other information (i) Was relied upon in making the benefit determination; (ii) Was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination." (R. 24, PageID# 4697-4698). The Court is not persuaded that a medical or vocational expert's CV or resume constitutes a document that was relied upon, submitted, considered or generated in making a benefit determination. Plaintiff cites no authority supporting his interpretation.